```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

John A. Smith & Catherine L. Smith,

                Plaintiffs,              CV-03-5358 (CPS)

      - against -                        MEMORANDUM
                                         OPINION AND ORDER
Herman Miller, Inc.,

                Defendant.
----------------------------------------X
```

SIFTON, Senior Judge.

John Smith and Catherine Smith originally commenced this action against Herman Miller, Inc., in the Supreme Court of New York, Suffolk County, seeking to recover damages incurred when an office chair collapsed. On October 23, 2003, Herman Miller removed the action to this Court. The notice of removal states that Herman Miller is incorporated under the laws of the State of Michigan and has its principal place of business in that state. It further alleges that the Smiths are citizens of New York, and the amount in controversy is in excess of $75,000. John Smith alleges the following claims for relief: 1) negligence; 2) breach of warranty of merchantability; and 3) strict liability. Catherine Smith alleges a claim of loss of consortium.

Presently before the Court is Herman Miller's motion to exclude the testimony of the Smiths' expert witness, Robert, Schwartzberg, pursuant to Federal Rule of Evidence 702 and for summary judgment pursuant to Federal Rule of Civil Procedure 56.

For the reasons that follow, the motion to exclude Schwartzberg's testimony is granted. If the plaintiffs intend to obtain additional evidence in support of their claims, they are directed to file a motion pursuant to Federal Rule of Civil Procedure 56(f) within thirty days of the date of this memorandum and order. The defendant's motion for summary judgment is denied without prejudice to its renewal after the plaintiffs have either filed a Rule 56(f) motion or the time provided for filing such motion has expired.

Background

The following facts are drawn from the Local Rule 56.1 statements, depositions, and affidavits submitted in connection with this motion. They are undisputed except where noted.

John Smith alleges that on July 26, 2002, he was an employee in the commercial loan department of Fuji Bank, located on 52nd Street in Manhattan. On that day, his desk chair collapsed, causing injury to his back. As designed, the chair called for the use of four threaded "mounting bolts" screwed into four metal sleeves inserted into the plastic material of which the chair base was made. These bolts held the seat of the chair to its base. Prior to or during the accident two of the four bolts and inserts fell out of the chair base and were lost. (Def. Rule 56.1 ¶ 15.)

Following the accident, the plaintiff hired Robert Schwartzberg, an engineer, to render an opinion on the chair's

design. In his report, Schwartzberg opines that "the inserts and the bottom of the seat were installed in a manner such that they were unable to overcome the force which would be generated by rocking the seat forward and back and by the lever arm generated by a persons [sic] weight sitting forward in the seat." (Schwartzberg Report 7.) The report states that as a result of Herman Miller's design, the "threaded insert" by which the bolts held the seat to the base of the chair tore away. Schwartzberg expresses the opinion that undescribed, alternative, more secure means of mounting the seat to the base were available at minimal cost. At his deposition, Schwartzberg stated that steel would have been an appropriate, stronger material instead of the plastic that Herman Miller used. In addition, although not mentioned in his report, Schwartzberg testified that the bolts that connected the chair base to the seat should have been more widely spread apart. Schwartzberg did not, however, design, draw, or construct a prototype of any alternative steel-based seat mounts or perform any tests on either Herman Miller's design or a prototype alternative.

The defendant's expert, Joseph R. Petrella, found no evidence that the chair was defective in any manner. In his report, he states that a review of Herman Miller's drawings and quality control testing revealed that the "threaded insert pullout force" that the chair could sustain was "routinely greater than 2,000 lbs." (Petrella Rep. 3.)

## Discussion

Herman Miller has filed a motion to exclude the testimony of the Smiths' expert witness and a motion for summary judgment. Because a court may consider only admissible evidence when ruling on a motion for summary judgment, I first determine whether the testimony of the expert witness is admissible. *See Nora Beverages, Inc. v. Perrier Group of Am.,* 164 F.3d 736, 746 (2d Cir. 1998); *Cacciola v. Selco Balers, Inc.*, 127 F. Supp. 2d 175, 179-80 (E.D.N.Y. 2001).

### Motion to Exclude Expert Testimony

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Rules of Evidence assign to the trial judge the task of ensuring that expert testimony is reliable and relevant. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). The burden is on the party proffering the expert testimony to lay a foundation for its admissibility. *Plourde v. Gladstone*, 190 F. Supp. 2d 708, 718 (D.Vt. 2002). A first step in determining the admissibility of expert testimony is to determine whether the witness has the requisite qualifications. *See Zaremba v. Gen.*

*Motors Corp.*, 360 F.3d 355, 360 (2d Cir. 2004) (describing an analysis of the reliability of the witness's methods as "superfluous" where the witness lacked qualifications). Second, the Court must determine if the expert's methodology is sufficiently reliable.[1]  *See id.*

Schwartzberg's Qualifications

Robert Schwartzberg is a licensed and registered Professional Engineer in the State of New York.  He graduated with a Bachelor of Science degree in general engineering from New York Maritime College in 1962 and a Masters Degree in Business Administration from Baruch College.  Since graduation, he has worked in a variety of positions, mostly involving marine and mechanical engineering.  He has worked at New York Ship Building as a design engineer working on "ship board components, pumps, [and] boilers."  (Schwartzberg Dep. 24.)  He also worked as a mechanical engineer for the Navy, and for M. Rosenblatt & Sons as a project engineer designing "anything and everything that went ship board."  (Schwartzberg Dep. 26.)  Thereafter, he worked for eleven years for an architectural firm as their "projection engineer" which required him to oversee "the specifications and design guidelines for ordering" office furnishings.  (Schwartzberg Dep. 28.)  Presently, Schwartzberg works as a home

---

[1] Neither party has requested an evidentiary hearing pursuant to Rule 104(a) with respect to the admissibility of Schwartzberg's testimony.

inspector and a consultant for attorneys in personal injury cases. (Schwartzberg Dep. 33.)

A court must consider the "totality of a witness's background when evaluating the witness's qualifications to testify as an expert." 29 WRIGHT & GOLD, FEDERAL PRACTICE AND PROCEDURE § 6265, at 246 (1997). An expert must be limited to opinion testimony in the area of expertise in which the proffering party can qualify the expert. *Goodwin v. MTD Prods., Inc*., 232 F.3d 600 (7th Cir. 2000). In this case, there is no evidence that Schwartzberg has ever designed furniture, studied furniture design, published papers or lectured on the subject, or worked for a company that designed furniture. He has no post-graduate education in engineering. The bulk of his experience is in marine engineering and building construction. Although courts may permit a witness with general engineering expertise to testify, it is questionable whether the Smiths have demonstrated that Schwartzberg has any "knowledge, skill, experience, training, or education" relevant to this case.

The Second Circuit addressed a similar evidentiary issue in *Zaremba v. General Motors Corp.*, 360 F.3d 355 (2d Cir. 2004). The Court of Appeals in that case upheld the exclusion of proposed expert testimony concerning the defective design of a car roof and windshield. The proffered expert had only a bachelor's degree in engineering and only experience designing automobile air bags and consulting for litigation. *Id*. at 359. In light of the questions which his testimony was expected to

address, the Court deemed these qualifications "meager" and any analysis of the witness's methodology "almost superfluous." *Id.* at 360; *see also Doe v. Am. Med. Sys., Inc.,* 96 Fed.Appx. 758 (2d Cir. 2004) (not an abuse of discretion to exclude testimony concerning design of penile implants by expert who, despite having "substantial engineering credentials" lacked expertise concerning medical devices).

Similarly, in *Barban v. Rheem Textile Systems, Inc.*, 2005 WL 387660 (E.D.N.Y. Feb. 11, 2005), Judge Glasser of this Court excluded opinion testimony concerning design defects in a laundry press on the grounds that the witness lacked sufficient expertise. Even though the witness in *Barban* had two masters degrees in engineering, his lack of experience designing or working with such presses warranted exclusion. *Id.* at *3-4.[2]

Schwartzberg's Methodology

Even were I to conclude that Schwartzberg possessed the necessary expertise in furniture design, I would exclude his

---

[2] The cases cited by the Smiths are not helpful. In *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 72 (S.D.N.Y. 2001), the court permitted an engineer with thirty-two years experience designing butane products testify concerning the safety of a butane lighter. He had designed thirty-five gas fueled and related products and worked on an additional two hundred. In *Lappe v. American Honda Motor Co., Inc.*, 857 F. Supp. 2d 222 (N.D.N.Y. 1994), the expert, who was expected to testify concerning the placement of brake pedals in a car and the strength of the car's roof, had a Ph.D. and taught courses in ergonomics, biomechanics, and occupational safety and health. And in *King v. Bradtjen & Kluge, Inc.*, 94-CV-411C, 2001 WL 1804345 (W.D.N.Y. June 20, 2001), the proffered expert was expected to testify concerning the custom and practice in the printing industry. Although he lacked formal education, he had fifty-five years experience in the industry. Schwartzberg's education and experience with chair design falls far short of these qualifications.

testimony because the Smiths have not established that the methodology Schwartzberg employed is reliable.

The second step in evaluating the admissibility of expert testimony is determining whether it rests on a reliable foundation. *Daubert*, 509 U.S. at 597. In performing this inquiry, a court is to consider whether the testimony is grounded in facts or data and reliable methods or principles, and whether the witness has applied the principles and methods to the facts of the case. FED. R. EVID. 702. The Supreme Court has identified a number of factors that may be relevant to the reliability of the testimony, including: (1) whether the theory or technique has been or will be tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the technique or theory has gained general acceptance in the relevant expert community. *Daubert*, 509 U.S. at 593-94.

Courts have repeatedly emphasized the importance of having an expert in a product liability case perform appropriate tests on his and the defendant's designs. *See, e.g., Bourelle v. Crown Equip. Corp.*, 220 F.3d 532, 537-38 (7th Cir. 2000); *Watkins v. Telsmith, Inc.*, 121 F.3d 984 (5th Cir. 1997); *Cummins v. Lyle Indus.*, 93 F.3d 362, 368 (7th Cir. 1996); *Peitzmeier v. Hennessy Indus.*, Inc., 97 F.3d 293, 297 (8th Cir. 1996); *Barban*, 2005 WL 387660, at *5; *Kass v. West Bend Co.*, 2004 WL 2475606, at *6 (E.D.N.Y. Nov. 4, 2004). In *Zaremba*, for example, the Second Circuit upheld the exclusion of an engineer's testimony

concerning alternative design of an automobile roof and windows in part because there was no showing that he had tested his new design. 360 F.3d at 358.[3]

Here the alternative design is not even described. There is no evidence that Schwartzberg has tested the design, much less built a prototype, or even reduced them to drawings or writing. (Schwartzberg Dep. 78-79.) Nor is there any indication that Schwartzberg performed any tests or measurements on Herman Miller's chair, other than physically manipulating the broken chair that John Smith had used to see if it was flexible. No tests appear to have been performed measuring the force that such a chair could sustain. (Schwartzberg Dep. 81.) Schwartzberg made no measurements concerning the hardness of the seat shell. (Schwartzberg Dep. 75-76.) Nor did he review any specifications concerning the material that comprised the shell from which any calculations could be based.[4]

This is not to say that testing of alternative designs is always necessary. An expert may, in some cases, provide drawings

---

[3] A case that the Smiths rely on, *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 78 (S.D.N.Y. 2001), in fact collects cases for this proposition and excludes testimony concerning an alternative design where it had not been tested nor any testable methodology been identified.

[4] Schwartzberg Dep. 76. In addition, any testing or methodology Schwartzberg did employ in producing his alternate design was conducted solely in the context of litigation. That fact increases the unreliability of his opinions. *See Wagner v. Hesston Corp.*, 03-4244, 2005 WL 1540135, at *6 (D.Minn. June 30, 2005) (noting that where alternate designs are made solely in the context of litigation, they are less reliable).

and calculations "that would allow a trier of fact to infer that his theory that the [product] was defective and that alternative designs would have prevented the accident without sacrificing utility were supported by valid engineering principles." *Watkins*, 121 F.3d at 992. But here the report contains no such drawings, calculations, or principles.

Nor have the Smiths shown what methods Schwartzberg relied on in recommending alternative designs or in faulting Herman Miller's design. Schwartzberg's report does not state what formulas or scientific literature he relied on. Nor is their evidence that Schwartzberg's recommended modifications have been accepted in the industry or are otherwise accepted. *Cf. Wagner*, 2005 WL 1540135, at *5 (discussing the importance of peer review of the theories or designs an expert uses in a products liability case). And because no alternative design or calculations were made in the expert report providing a basis for peer review, it is impossible to determine their known rate of error, or to assess whether they have been or would be generally accepted in the furniture design community.

This lack of calculations, alternative design, testing, or supporting research material renders it nearly impossible to discern precisely what Schwartzberg's methodology in coming to his conclusion was. The expert report consists almost exclusively of his observations concerning the physical characteristics of the chair without supporting measurements, and the conclusion that the chair could not withstand a rocking

- 11 -

motion. A proponent of expert testimony bears the burden of showing "a grounding in the methods and procedures of science which must be based on actual knowledge and not subjective belief or unaccepted speculation." *Mitchell v. Gencorp, Inc.*, 165 F.3d 778, 780 (10th Cir. 1999). Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit expert testimony that is based solely on "experience" or "training" with no identified methodology or connection to an industry standard. *Clark v. Takata Corp.*, 192 F.3d 750, 758 (2d Cir. 1999).[5]

The Smiths contend that, although his report is devoid of a discernible methodology, Schwartzberg provided one during his deposition when he stated that he used an engineering principle he called "structures, attachments," which is a "rule of thumb." (Schwartzberg Dep. 91.) The Smiths also point to certain calculations made aloud during Schwartzberg's deposition while applying this heuristic.[6] These vague references to a "rule of

---

[5] Herman Miller also objects to Schwartzberg's testimony on the grounds that it is based in part on hearsay from an unidentified source. There is no general prohibition on an expert witness relying on hearsay evidence, so long as it is the type reasonably relied upon by experts in the field. FED. R. EVID. 703; *Montefiore Med. Cent. v. American Protection Ins. Co.*, 226 F. Supp. 2d 470, 474-75 (S.D.N.Y. 2002). Herman Miller cites *Borgognone v. Trump Plaza*, 98-CV-6139, 2000 WL 341135, but that case is not to the contrary. *Borgognone* merely stands for the proposition that an expert may not testify to facts of which he has no knowledge. *Id.* at *5.

[6] Plaintiffs cite the following exchange:

Q: Can you tell us what distance the front bolt in your opinion should be moved closer to the front in relation to where it was placed by the manufacturer?

(continued...)

thumb" and the performance of mental calculations do not, however, satisfy the plaintiffs' burden of demonstrating the existence of a coherent methodology.

Schwartzberg's report, in sum, consists of his conclusion that the chair was unreasonably designed because it would be unable to withstand the pressure created by someone rocking forward and back in it. He based this reasoning on the spacing of the bolts and the materials used. But his failure to explain the reasoning or calculations behind that conclusion leaves the Court "with the mere *ipse dixit*, or say so, of the" witness.[7]

---

(...continued)
    A: I would estimate in the neighborhood of 6 inches.

    Q: What is the basis for your estimate of 6 inches, the chair is 19 and a half inches front to back?

    A: 40 percent of 19 is about 4 inches front and that is 8 inches, leaves 11 inches in the middle, that is about 60 percent.

    Q: Where do you get the 40 percent from?

    A: If a chair is 19 inches, 20 inches front to back, okay, and I am saying that the bold should be separate by 60 percent. That leaves 40 percent for the front and 40 percent total front and back. 20 percent of 20 inches is 4 inches.

Schwartzberg Dep. 95-97.

[7] *Dreyer v. Ryder Automotive Carrier Group, Inc.*, 367 F. Supp. 2d 413, 417 (W.D.N.Y. 2005). This standard was similarly applied by Judge Glasser in *Borognone,* 2000 WL 341135, at *5:

> The problem here is that there is no indication in Goldblatt's report of the engineering protocols and methods he employed in arriving at the normative conclusions embodied within the claims. Civil engineers presumably have objective methods and scientific standards that may be brought to bear in the assessment of such familiar, lay categories as the "slipperiness" of tile flooring, or the construction of shower stalls with tiered floor levels. Goldblatt makes no mention of these methods or standards in opining on these matters, appearing to rest solely on his laurels as a civil engineer, whose opinions just by virtue of that fact

(continued...)

Accordingly, whether or not Schwartzberg is qualified to testify concerning the appropriate design of office furniture, the plaintiffs have not demonstrated that his testimony is sufficiently reliable to warrant admission into evidence.[8]

Summary Judgment

Herman Miller has also moved for summary judgment, contending that without Schwartzberg's testimony, the Smiths have no evidence that the chair had a design or manufacturing defect or was unfit for ordinary use. The Smiths, for their part, do not offer any other evidence of a defect. Accordingly, were the Court required to decide the defendant's motion at this time, summary judgment might be appropriate. *See Macaluso v. Herman*

---

[7](...continued)
are admissible as relevant expertise. But this manner of proceeding is precisely what *Daubert* and *Kumho Tire* will not countenance. An expert, regardless of how sterling his credentials, must make clear in his proffer the methods and standards he proposes to apply in arriving at his opinions and evaluations, and must make clear in doing so that those methods and standards are reliable, and subject to objective evaluation by the expert's peers. In his statements about the design and construction of the shower area at issue, Goldblatt fails entirely to do this, and consequently his testimony on these matters is not admissible as expert testimony under Rule 702.

[8] In contending that Schwartzberg's methodology is sufficiently reliable, the Smiths rely on *Byrne v. Gracious Living Industries, Inc.*, 01 Civ. 10153, 2003 WL 446474 (S.D.N.Y. Feb. 23, 2003). The court in that brief opinion permitted plaintiff's expert to testify that an examination of the defendant's plastic chair revealed "seams or cold flow markings" and "gas porosity" that "can reduce the mechanical properties of the plastic." *Id.* at *1. The defendants contended that the admitted expert had not performed experiments on the chair or published peer reviewed articles on plastic chair manufacturing. The court admitted the testimony "*given [the witness's] expertise* and its foundation on observable conditions of the subject chair." *Id.* (emphasis added). Here, however, Schwartzberg's expertise has not been thoroughly established.

*Miller, Inc*., 01 Civ. 11496, 2005 WL 563169 (S.D.N.Y. Mar. 10, 2005) (granting summary judgment under like circumstance). Except, perhaps, when the issue concerns qualified immunity, however, a district judge has the discretion to deny or postpone consideration of a motion for summary judgment when he has doubt concerning the wisdom of disposing of the case at that time. *Veillon v. Exploration Servs., Inc*., 876 F.2d 1197, 1200 (5th Cir. 1989); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986); *Buenrostro v. Collazo*, 973 F.2d 39, 42 n.2 (1st Cir. 1992); *Forest Hills Early Learning Cent. v. Lukhard*, 728 F.2d 230, 245 (4th Cir. 1984); *Marcus v. St. Paul Fire and Marine Ins. Co.*, 651 F.2d 379, 382 (5th Cir. 1981); *Johns v. Int'l Bus. Mach.*, 361 F. Supp. 2d 184, 191 (S.D.N.Y. 2005).

The decision to preclude the Schwartzberg's testimony does not foreclose the possibility that the plaintiffs could obtain testimony supporting their claims from an engineer qualified to testify concerning appropriate furniture design. If the plaintiffs intend to obtain such testimony, they are directed to submit a motion pursuant to Federal Rule of Civil Procedure 56(f)[9] within thirty days of the date of this order. The defendant's motion for summary judgment is denied without

---

[9] Rule 56(f) provides:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

prejudice to its renewal after the plaintiffs have either filed said motion or the time provided for in this memorandum has expired.

## Conclusion

For the foregoing reasons, Herman Miller's motion to exclude the testimony of the Smiths' expert witness, Robert, Schwartzberg, pursuant to Federal Rule of Evidence 702 is granted.  If the plaintiffs intend to obtain additional evidence in support of their claims, they are directed to file a motion pursuant to Federal Rule of Civil Procedure 56(f) within thirty days of the date of this memorandum and order.  The defendant's motion for summary judgment is denied without prejudice to its renewal after the plaintiffs have either filed said motion or the time provided for in this memorandum has expired.

The Clerk is directed to furnish a filed copy of the within to all parties and to the magistrate judge.

       SO ORDERED.

Dated :    Brooklyn, New York

       August 26, 2005

          By: /s/ Charles P. Sifton (electronically signed)
              United States District Judge